# LOAN NOTE

$3,750,000.00

Flushing, New York
January 12, 2005

FOR VALUE RECEIVED, **SOUTH COCHRAN CORPORATION**, a Nevada corporation, having an office c/o Transcontinental Realty Investors, Inc., 1800 Valley View Lane, Suite 300, Dallas, TX 75234 ("Maker"), promises to pay to GRAND PACIFIC FINANCE CORP., a New York corporation ("Holder"), or order, at its office at China Trust Plaza, 41-99 Main Street, 2nd Floor, Flushing, New York 11355 or at such other place as may be designated in writing by the holder of this Note, the principal sum of THREE MILLION SEVEN HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($3,750,000.00), with interest thereon, to be computed as hereinafter provided or on the amount thereof from time to time outstanding, until the said principal sum shall be fully paid, as hereinafter provided. The said principal sum, or the amount thereof outstanding with accrued and unpaid interest thereon, and all other amounts evidenced and payable hereunder, shall be due and payable on the Maturity Date (as hereinafter defined).

    1. Definitions. The following terms, as used in this Note, shall have the following meanings, which meanings shall be applicable equally to the singular and the plural of the terms defined:

    a. "Business Day" shall mean a day of the year on which banks are not required or authorized to close in the City of New York.

    b. "Default Rate" shall mean a fluctuating per annum rate of interest equal at all times to the sum of 5% plus the Stated Rate in effect from time to time. The Default Rate shall change from time to time in accordance with changes in the Stated Rate.

    c. "Guarantor" shall mean Transcontinental Realty Investors, Inc.

    d. "Loan" shall mean that certain mortgage loan in the principal amount of $3,750,000.00 made by Holder to Maker in respect of the Premises, which is evidenced by this Note and secured by, among other things, the Mortgage, the Assignment of Leases and Rents and the Guaranty referred to in Paragraph 1(e) hereof.

    e. "Loan Documents" shall mean, collectively, this Note; the Mortgage; the Assignment of Leases and Rents, dated the date hereof, executed by Maker in favor of Holder; the Environmental Agreement, dated the date hereof, executed by Maker and Guarantors in favor of Holder; the Guaranty, dated the date hereof, executed by Guarantor in favor of Holder; and any other document evidencing, securing or otherwise relating to the Loan now or hereafter executed and delivered by Maker, any Guarantor or any other party, as the case may be, to Holder and any amendments, modifications, renewals, extensions and replacements thereof and substitutions therefor.

EXHIBIT A

f. "Maturity Date" shall mean the earlier of (i) January 12, 2010 or (ii) the date upon which the indebtedness evidenced hereby becomes due and payable by reason of a default hereunder or under any of the other Loan Documents.

g. "Mortgage" shall mean that certain Mortgage and Security Agreement, dated the date hereof, made by Maker, as mortgagor, in favor of Holder, as mortgagee, encumbering the Premises and given as security for this Note.

h. "Premises" shall mean the real property together with the buildings and other improvements now or hereafter erected thereon at 104 Franklin Street, U.S. Highway 20 at Franklin Street, Michigan City, County of LaPorte, Indiana (designated as Tax Key Nos; 13-05-08-226-038 (Parcel I), 13-05-08-999-002 (Parcels I and IV), 13-05-08-226-009 (Parcel II), 13-05-08-999-005 (Parcel II), 13-05-08-226-039 (Part Parcel III), 13-05-08-226-040 (Part Parcel III), 13-05-08-999-003 (Parcel III), 13-05-08-226-015 (Parcel IV), 13-05-08-202-014 (Parcel V), 13-05-08-202-017 (Parcel VI), 13-05-08-202-018 (Parcel VII), 13-05-08-253-007 (Parcel VIII), 13-05-08-999-004 (Parcel VIII), 13-05-08-202-015 (Parcel IX), 13-05-08-999-006 (Parcel IX), 13-05-08-202-019 (Parcel X), 13-05-08-202-007 (Parcel XI), 13-05-08-226-037 (Parcel XII), 13-05-08-999-02 (Parcels III & XII) and 13-05-08-226-099), as more particularly described in the Mortgage.

i. "Prime Rate" shall mean the prime rate which is published from time to time in the Wall Street Journal. Any change in such published Prime Rate shall be effective, without notice, as of the date of such publication.

j. "Stated Rate" shall mean a fluctuating per annum rate of interest equal at all times to the sum of two percent (2.0%) plus the Prime Rate in effect from time to time. The Stated Rate shall change from time to time, without notice, in accordance with changes in the Prime Rate.

2. Applicable Rate.

a. Except as otherwise provided in Paragraph 2(b) hereof, the entire outstanding principal amount of the Loan shall bear interest at the Stated Rate. Interest under this Note shall be computed on the basis of a 360-day year for the actual number of days elapsed.

b. Upon the occurrence and during the continuance of a default hereunder or under any of the other Loan Documents or upon a default whereby Holder has accelerated the indebtedness evidenced by this Note, the entire outstanding principal amount of the Loan shall bear interest at an interest rate per annum equal at all times to the Default Rate in effect from time to time.

c. It is the intention of Maker and Holder to conform strictly to the usury and similar laws relating to interest from time to time in force, and all agreements between Maker and Holder, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by acceleration of maturity hereof or otherwise, shall the amount paid or agreed to be paid in the aggregate to Holder as interest

hereunder or under the other Loan Documents or in any other security agreement given to secure the indebtedness of Maker to Holder, or in any other document evidencing, securing or pertaining to the indebtedness evidenced hereby, exceed the maximum amount permissible under applicable usury or such other laws (the "Maximum Amount"). If under any circumstances whatsoever fulfillment of any provision hereof, or any of the other Loan Documents, at the time performance of such provision shall be due, shall involve transcending the Maximum Amount, then ipso facto, the obligation to be fulfilled shall be reduced to the Maximum Amount.

        d.      If, under any circumstances Holder shall ever receive an amount which would exceed the Maximum Amount, such amount shall be deemed a payment in reduction of the principal amount owing hereunder and shall be so applied or shall be applied to the principal amount of other indebtedness secured by the Mortgage or other Loan Documents, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal of this Note and any other indebtedness of Maker in favor of Holder, the excess shall be deemed to have been a payment made by mistake and shall be refunded to Maker.

3.      Loan Payments.

        a.      Interest Payments. Interest in the amount of $15,104.20 is due on the date hereof on account of the period from the date hereof through and including January 31, 2005. Installments of interest shall be due and payable in arrears on the first day of each month commencing February 1, 2005 unless such day is not a Business Day, in which event interest shall be payable on the first Business Day preceding such date (each an "Interest Payment Date").

        b.      Principal Repayment. Installments of principal shall also be due and payable on each Interest Payment Date commencing March 1, 2005, based on a twenty (20) year amortization schedule, except that all remaining principal and interest shall be due and payable on the Maturity Date.

        c.      Origination Fee. Maker shall pay Holder an origination fee in the amount of Fifty Six Thousand Two Hundred Fifty and 00/100 Dollars ($56,250.00) (the "Origination Fee"). The Origination Fee shall be due and payable on the date hereof.

        d.      Timing of Principal and Interest Payments. Both principal and interest are payable in lawful money of the United States of America to Holder, in funds which shall be available no later than 11:00 A.M. (New York City time) on the day on which the applicable payment of principal or interest is due. Upon written notice from the Holder, the Maker shall make all payments due hereunder to account(s) specified by the Holder.

4.      Prepayment. On and after the date hereof, the Maker, may make partial prepayments of principal in amounts of not less than $1,000.00, together with interest thereon computed through last day of the month of prepayment, at the Stated Rate, and together with a premium as provided herein. For purposes of this paragraph, "loan prepayment year" means each twelve month period beginning with the date hereof or any anniversary date thereof. Prepayments of

principal in whole or in part may be made provided that the Maker gives the holder hereof written notice of the full amount to be prepaid at least thirty (30) days prior to such prepayments and provided further that the Maker pays to the holder hereof together with each such prepayment (including prepayments occurring as a result of the acceleration by the holder hereof of the principal amount of this Note, whether such prepayments are voluntary or involuntary, by operation of law or otherwise), a prepayment premium. In the first loan prepayment year the prepayment premium shall be an amount equal to three percent of the prepayment amount, in the second loan prepayment year the prepayment premium shall be an amount equal to two percent of the prepayment amount, and in the third loan prepayment year, the prepayment premium shall be an amount equal to one percent of the prepayment amount and for the fourth loan prepayment year and thereafter there shall be no prepayment premium due with respect to any prepayment under this Note.

Prepayments shall be applied against the outstanding principal balance of this Note and shall not extend or postpone the due date of any subsequent monthly installment or change the amount of any such installment, unless the holder hereof shall agree otherwise in writing. The holder hereof may require that any partial prepayments be made on the date monthly installments are due and be in the amount of that part of one or more monthly installments which would be applicable to principal.

Upon any default by Maker and following the acceleration of maturity, a tender of payment of the amount necessary to satisfy the entire indebtedness made at any time prior to foreclosure sale by the Maker, its heirs, successors or assigns, shall constitute an evasion of the prepayment terms hereunder and be deemed to be a voluntary prepayment and any such payment, to the extent permitted by law, will, therefore, include the penalty required under the prepayment privilege set forth above.

     5. <u>Security; Acceleration</u>. This Note is secured by, and entitled to the benefits of, among other things, the Mortgage, the Assignment of Leases and Rents, the Environmental Agreement and the Guaranty referred to in Paragraph 1(e) hereof. It is expressly agreed that the principal sum of this Note (and all accrued interest thereon and other sums payable hereunder) shall become immediately due at the option of Holder on the happening of either (i) an Event of Default (as defined in the Mortgage) or (ii) any default, and the expiration of any applicable notice and/or grace period, under the terms of this Note or under any of the other Loan Documents.

     6. <u>Applicable Law</u>. Maker agrees that this Note shall be governed by, and construed and enforced in accordance with, the laws of the State of Indiana without regard to the principles of conflicts of laws.

     7. <u>Modification</u>. This Note may not be changed or terminated orally.

     8. <u>Waiver</u>.

     a. Maker and any endorsers, sureties and guarantors hereof or hereon hereby waive presentment for payment, demand, protest, notice of non-payment or dishonor and of protest, and agree to remain bound until the principal sum of this Note or the amount thereof outstanding and interest and all other sums payable hereunder are paid in full notwithstanding any

extensions of time for payment which may be granted even though the period of extension be indefinite, and notwithstanding any inaction by, or failure to assert any legal right available to, Holder.

    b. It is further expressly agreed that any waiver by Holder, other than a waiver in writing signed by Holder, of any term or provision hereof or of any of the other Loan Documents or of any right, remedy or option under this Note or any of the other Loan Documents shall not be controlling, nor shall it prevent or estop Holder from thereafter enforcing such term, provision, right, remedy or option, and the failure or refusal of Holder to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Note or any of the other Loan Documents shall not be construed as a waiver or relinquishment for the future of any such term or provision, but the same shall continue in full force and effect, it being understood and agreed that Holder's rights, remedies and options under this Note and the other Loan Documents are and shall be cumulative and are in addition to all other rights, remedies and options of Holder in law or in equity or under any other agreement.

  9. Successors. The term "Holder" shall mean the then holder of this Note from time to time and its successors and assigns.

  10. Late Charges. In the event any payment or installment due or payable under this Note and/or under any of the other Loan Documents shall become overdue for a period in excess of ten (10) days, in addition to interest being charged at the Default Rate and Holder's other remedies, a "late charge" of five cents ($0.05) for each dollar so overdue may be charged by Holder for the purpose of defraying the expenses incident to handling such delinquent payment or installment.

  11. Cost of Collection. Maker shall pay all costs of collection when incurred, including, without limitation, the attorneys' fees and disbursements of Holder's counsel and court costs, which costs (i) may be added to the indebtedness evidenced hereby, (ii) must be paid promptly on demand, together with interest thereon at the Default Rate, and (iii) shall be secured by the lien of the Mortgage.

  12. Miscellaneous.

    a. Maker and Holder hereby irrevocably waive all rights to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Note.

    b. In the event that any provision of this Note or the application thereof to Maker or any circumstance in any jurisdiction governing this Note shall, to any extent, be invalid or unenforceable under any applicable statute, regulation or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict herewith and shall be deemed modified to conform to such statute, regulation or rule of law, and the remainder of this Note and the application of any such invalid or unenforceable provision to parties, jurisdictions or circumstances other than to whom or to which it is held invalid or unenforceable shall not be affected thereby nor shall the same affect the validity or enforceability of any other provision of this Note.

c. Time is of the essence as to all dates set forth in this Note.

d. Maker hereby agrees to perform and comply with each of the terms, covenants and provisions contained in this Note and in any instrument evidencing or securing the indebtedness evidenced by this Note on the part of Maker to be observed and/or performed hereunder and thereunder. No release of any security for the principal sum due under this Note, or any portion thereof, and no alteration, amendment or waiver of any provision of this Note or of any instrument evidencing and/or securing the indebtedness evidenced by this Note made by agreement between Holder and any other person or party shall release, discharge, modify, change or affect the liability of Maker under this Note or under such instruments.

e. No act of commission or omission of any kind or at any time upon the part of Holder, its co-lenders and participants, if any, in respect of any matter whatsoever shall in any way impair the rights of Holder to enforce any right, power or benefit under this Note and no litigation, dispute, refund, compromise, adjustment, extension, satisfaction, set-off, counterclaim, netting, abatement, suspension, deferment, deductible, reduction, termination, modification or diminution of any obligation or any defense of any kind or nature which Maker has or may have against Holder, its co-lenders and participants, if any, shall be available hereunder to Maker.

f. The captions preceding the text of the various paragraphs contained in this Note are provided for convenience only and shall not be deemed to in any way affect or limit the meaning or construction of any of the provisions hereof. Words of masculine, feminine or neuter gender shall mean and include the correlative words of the other genders, and words importing the singular number shall include the plural number, and vice versa.

g. Maker hereby irrevocably submits to the jurisdiction of the state court or federal court in the jurisdiction in which the Premises are located, in any action, suit or proceeding brought against Maker under or in connection with this Note or any of the other Loan Documents, and hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of forum non convenience.

h. Maker hereby acknowledges and agrees that service of all process in any action, suit or proceeding shall be effective if sent by registered or certified mail to Maker at its address set forth herein or as otherwise served upon Maker in accordance with law of the state in which the Premises are located.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]
[SIGNATURE PAGE FOLLOWS]

i. Without consent or notice, Holder may assign to one or more banks or other entities all or a portion of its rights under this Note. In the event of an assignment of all of its rights, Holder may transfer this Note to the assignee. In the event of an assignment of a portion of its rights under this Note, Holder shall deliver to Maker a new note to the order of the assignee in an amount equal to the principal amount assigned to the assignee and a new note to the order of Holder in an amount equal to the principal amount retained by Holder (collectively, the "New Notes"). Such New Notes shall be in an aggregate principal amount equal to the outstanding principal amount of this Note, shall be dated the effective date of the assignment and otherwise shall be substantially identical to this Note. Upon receipt of the New Notes from Holder, Maker shall execute such New Notes and, if requested by Holder, a splitter and/or a modification of the Mortgage, in form and substance reasonably satisfactory to Holder, and at the expense of Maker, promptly deliver such New Notes and splitter and/or modification of the Mortgage to Holder. Upon receipt of the executed New Notes from Maker, Holder shall return this Note to Maker. Holder and the assignee shall make all appropriate adjustments in payments under this Note for periods prior to such effective date directly between themselves. In the event of an assignment of all or any portion of its rights hereunder, Holder may transfer and deliver all or any of the property then held by it as security under the Mortgage and the assignee shall thereupon become vested with all the powers and rights therein given to Holder with respect thereto. After any such assignment or transfer, Holder shall be forever relieved and fully discharged from any liability or responsibility in the matter, and Holder shall retain all rights and powers hereby given with respect to property not so transferred. Holder may sell participations to one or more banks or other entities in or to all or a portion of its rights under this Note; provided, however, that Holder shall remain the holder of this Note and accordingly Maker shall continue to deal solely and directly with Holder in connection with Holder's rights under this Note. Holder may, in connection with any assignment or participation or proposed assignment or proposed participation, disclose to the assignee or participant or proposed assignee or proposed participant any information relating to Maker furnished to Holder by or on behalf of Maker.

SOUTH COCHRAN CORPORATION

By: _____
Name: A. Cal Rossi, Jr.
Title: Vice President

ACKNOWLEDGMENT

STATE OF California

COUNTY OF San Francisco

On the 24 t day of December in the year 2004 before me, the undersigned, personally appeared A. Cal Rossi, Jr. personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _____. (Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

H-MT. Najmabadi

> HAJI MOHAMAD TAGHI NAJMABADI
> Commission # 1475145
> Notary Public - California
> San Francisco County
> My Comm. Expires Apr 5, 2008