Melissa S. Hayward
  Texas Bar No. 24044908
  MHayward@FSLHlaw.Com
**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
TEL: (972) 755-7100
FAX: (972) 755--7110

PROPOSED COUNSEL FOR
EQK BRIDGEVIEW PLAZA, INC.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **EQK BRIDGEVIEW PLAZA, INC.** | § | Case No. 10-37054-SGJ-11 |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |
| | § | |

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE
<u>DEBTOR TO USE CASH COLLATERAL</u>**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:**

    EQK Bridgeview Plaza, Inc. (the "<u>Debtor</u>") files this *Motion for Interim and Final Orders Authorizing the Debtor to Use Cash Collateral* (the "<u>Motion</u>") pursuant to 11 U.S.C. §§

105, 361, 362, 363, 507, 552, and FED. R. BANKR. P. 4001, and in support thereof respectfully represents to the Court as follows.

# I.
# JURISDICTION & VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This Motion constitutes a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 & 1409.

# II.
# BACKGROUND

2. On October 4, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, initiating the above-styled bankruptcy case.

3. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4. No creditors' committee has been appointed in this case by the United States Trustee. Further, no trustee or examiner has been requested or appointed in this chapter 11 case.

5. The Debtor's primary assets consist of various real estate holdings in multiple states. Specifically, the Debtor owns: (i) the Bridgeview Plaza shopping center located at 2420 Rose Street in La Crosse, Wisconsin 54603 (the "Bridgeview Property"); (ii) an office building and warehouse and approximately 12.07 acres of land located behind the office building located at 1925 Valley View Lane in Farmers Branch, Texas 75234 (the "Eagle Crest Property"); (iii) approximately 2,928.441 acres of undeveloped land in Kaufman County, Texas (the "Windmill Farms Property"); and (iv) the Dunes Plaza shopping center located at 104 Franklin Street in Michigan City, Indiana 46360 (the "Dunes Plaza Property", collectively with the Bridgeview Property, the Eagle Crest Property, and the Windmill Farms Property, the "Properties").

6. In addition to owning the Properties, the Debtor owns several deposit accounts (the "Accounts") which are used by the Debtor to operate the Properties, including to pay the Debtor's insurance, property taxes, management fees, utilities, maintenance, and marketing expenses (the "Operational Costs").

7. The Properties and the Accounts constitute substantially all the property of the estate.

8. With regard to the Bridgeview Property, as of the Petition Date, the Debtor was allegedly indebted to Grand Pacific Finance Corp. ("Grand Pacific") pursuant to a loan made to the Debtor by Grand Pacific on or about March 24, 2005 in the original principal amount of $7,197,000.00 (the "Bridgeview Loan"). The Bridgeview Loan is evidenced by, *inter alia*: (i) a *Loan Note* dated March 24, 2005 in the original principal sum of $7,197,000.00 executed by the Debtor and payable to Grand Pacific; and (ii) a *Mortgage, Security Agreement, and Fixture Financing Statement* by and between the Debtor and Grand Pacific Finance Corp. dated March 24, 2005 (collectively, the "Pre-Petition Bridgeview Loan Documents"). The Bridgeview Loan is allegedly secured by various instruments, including a deed of trust and UCC-1 financing statements, which were allegedly filed of record in appropriate jurisdictions. Collateral for the Bridgeview Loan includes, *inter alia*, the Bridgeview Property, the Bridgeview Account, and rents received from the operation of the Bridgeview Property.

9. With regard to the Eagle Crest Property, as of the Petition Date, the Debtor was allegedly indebted to Bank of America, N.A. (successor by merger to LaSalle Bank National Association), a national banking association, as indenture trustee under the Indenture, dated November 30, 2006 between Hometown Commercial Trust 2006-1 and LaSalle Bank National Association, acting through its servicer Midland Loan Services, Inc.

("BOA") pursuant to a loan originally made to Transcontinental Brewery, Inc. by Hometown Commercial Capital, LLC on or about October 13, 2006 in the original principal amount of $2,450,000.00 (the "Eagle Crest Loan"). The Eagle Crest Loan is evidenced by, *inter alia*: (i) a *Promissory Note* dated October 2006 in the original principal sum of $2,450,000.00 executed by Transcontinental Brewery, Inc. and payable to Hometown Commercial Capital, LLC; and (ii) a *Deed of Trust and Security Agreement Security Agreement* by and between Transcontinental Brewery, Inc. and Hometown Commercial Capital, LLC dated October 13, 2006 (collectively, the "Pre-Petition Eagle Crest Loan Documents"). The Eagle Crest Loan is allegedly secured by various instruments, including a deed of trust and UCC-1 financing statements, which were allegedly filed of record in appropriate jurisdictions. Collateral for the Eagle Crest Loan includes, *inter alia*, the Eagle Crest Property, the Eagle Crest Account, and rents received from the operation of the Eagle Crest Property.

10. With regard to the Windmill Farms Property, as of the Petition Date, the Debtor was allegedly indebted to Branch Banking & Trust Company ("BB&T") pursuant to a loan originally made to EQK Windmill Farms, LLC, a Nevada Corporation, by Colonial Bank, N.A. on or about November 17, 2006 in the original principal amount of $43,806,786.00 (the "Windmill Farms Loan"). The Windmill Farms Loan is evidenced by, *inter alia*: (i) a *Promissory Note* dated November 17, 2006 in the original principal sum of $43,806,786.00 executed by EQK Windmill Farms, LLC and payable to Colonial Bank, N.A.; (ii) a *Loan Agreement* dated November 17, 2006 by and between EQK Windmill Farms, LLC and Colonial Bank, N.A., as amended from time to time; and (iii) a *Deed of Trust* by and between EQK Windmill Farms, LLC and Colonial Bank, N.A. dated November 17, 2006, as it has been amended from time to time (collectively, the "Pre-Petition Windmill Farms Loan

Documents"). The Windmill Farms Loan is allegedly secured by various instruments, including the deed of trust and UCC-1 financing statements, which were allegedly filed of record in appropriate jurisdictions. Collateral for the Windmill Farms Loan includes, *inter alia*, the Windmill Farms Property and the Windmill Farms Account.

11. With regard to the Dunes Plaza Property, as of the Petition Date, the Debtor was allegedly indebted to Grand Pacific (collectively with BOA and BB&T, the "Pre-Petition Lenders") pursuant to a loan made to South Cochran Corporation by Grand Pacific on or about January 12, 2005 in the original principal amount of $3,750,000.00 (the "Dunes Plaza Loan"). The Grand Pacific Dunes Plaza Loan is evidenced by, *inter alia*: (i) a *Loan Note* dated January 12, 2005 in the original principal sum of $3,750,000.00 executed by South Cochran Corporation and payable to Grand Pacific; and (ii) a *Mortgage, Security Agreement, Fixture Filing and Assignment of Leases and Rents* by and between South Cochran Corporation and Grand Pacific dated January 12, 2005 (collectively, the "Pre-Petition Dunes Plaza Loan Documents", collectively with the Pre-Petition Bridgeview Loan Documents, the Pre-Petition Eagle Crest Loan Documents, and the Pre-Petition Windmill Farms Loan Documents, the "Pre-Petition Loan Documents"). The Dunes Plaza Loan is allegedly secured by various instruments, including a deed of trust and UCC-1 financing statements, which were allegedly filed of record in appropriate jurisdictions. Collateral for the Dunes Plaza Loan includes, *inter alia*, the Dunes Plaza Property, the Dunes Plaza Account, and rents received from the operation of the Dunes Plaza Property.

12. The Debtor's only source of operating funds is generated by the operation of the Properties.

13. By virtue of the Pre-Petition Loan Documents referenced above, the Pre-Petition Lenders are asserting a first priority lien on substantially all of the Debtor's assets, including its rents and Accounts, which constitute cash collateral pursuant to Section 363(a) of the Bankruptcy Code.

14. The Debtor requires the use of the Lenders' cash collateral to continue the operation of its business. The Debtor will suffer irreparable and immediate harm if it is not granted the relief requested herein. An immediate and critical need exists for the Debtor to obtain funds in order to continue the operation of its business. Without such funds, the Debtor will not be able to pay its direct operating expenses and obtain goods and services needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor's ability to use the Lenders' Cash Collateral is vital to the confidence of the Debtor's vendors and suppliers of the goods and services, to the Debtor's tenants, and to the preservation and maintenance of the going concern value of the Debtor's estate.

15. Pursuant to Section 363 of the Bankruptcy Code, the Debtor requests authority to use cash collateral to satisfy its normal and necessary operating expenses. A budget reflecting the projected normal and necessary costs for the month of October 2010 is attached to the Affidavit of Greg Crown, which is attached hereto as <u>Exhibit A</u> (the "<u>Affidavit</u>"), as <u>Exhibit 1</u>.

16. Absent the authority to use the amounts set forth in Exhibit 1 to the Affidavit, the Debtor will be unable to operate and successfully reorganize.

17. The Debtor submits that each of the Lenders' respective interests is adequately protected. With regard to the Bridgeview Property, the Eagle Crest Property, and the Windmill Farms Property, each Lender is significantly oversecured, as the value of the real property

serving as collateral for each respective Lender significantly exceeds the amount of the indebtedness. Further, each of the Properties is fully covered by commercial property and liability insurance. Notwithstanding the above, the Debtor will also provide each Lender with a replacement lien on post-petition income to protect each Lender to the extent of any diminution in value of its respective collateral.

18.     The Debtor has not fully reviewed or evaluated the extent and validity of each Lender's asserted liens and reserves the right to contest such liens.

WHEREFORE, BASED UPON THE FOREGOING, the Debtor requests that the Court grant the relief requested, authorize the Debtor's use of the cash collateral under the terms set forth herein, and grant the Debtor such other and further relief in law or in equity to which the Debtor may show itself justly entitled.

DATED:  October 13, 2010.

Respectfully submitted,

**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**

By:  */s/ Melissa S. Hayward*
    Melissa S. Hayward
    Texas Bar No. 24044908
    MHayward@FSLHlaw.Com

10501 N. Central Expy., Suite 106
Dallas, Texas 75231
972.755.7100 (phone)
972.755.7110 (facsimile)

**PROPOSED COUNSEL FOR THE DEBTOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent either electronically by the Clerk of Court or via first United States mail, postage prepaid, to all parties requesting notice in this case and to all parties appearing on the attached service list, on October 13, 2010.

                                                    */s/ Melissa S. Hayward*
                                                    Melissa S. Hayward

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that she has communicated with each of the Lenders' attorneys, attached copies of the October budget, and requested authority to use cash collateral on an interim basis. As of this filing, none of the Lenders have consented to the Debtor's usage of cash collateral, although the parties continue to work together to negotiate an acceptable order.

                                                    */s/ Melissa S. Hayward*
                                                    Melissa S. Hayward