David M. Bennett
Texas Bar No. 02139600
Demetra L. Liggins
Texas Bar No. 24026844
B. Ransdell Sawyer
Texas Bar No. 24070557
**THOMPSON & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas  75201
Telephone: 214/969-1700
Facsimile: 214/969-1751

ATTORNEYS FOR BANK OF AMERICA, N.A.
(SUCCESSOR BY MERGER TO LASALLE BANK
NATIONAL ASSOCIATION), A NATIONAL BANKING
ASSOCIATION, AS INDENTURE TRUSTEE UNDER
THE INDENTURE DATED NOVEMBER 30, 2006,
BETWEEN HOMETOWN COMMERCIAL TRUST 2006-1
AND LASALLE BANK NATIONAL ASSOCIATION

                    IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE NORTHERN DISTRICT OF TEXAS
                                DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EQK BRIDGEVIEW PLAZA, INC., | § | CASE NO.  10-37054-SGJ11 |
| | § | |
| Debtor. | § | |

            MOTION OF NOTEHOLDER FOR RELIEF FROM AUTOMATIC STAY

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242-1496, AND SERVED ON DAVID M. BENNETT, THOMPSON & KNIGHT LLP, 1722 ROUTH STREET, SUITE 1500, DALLAS, TEXAS 75201 ON OR BEFORE NOVEMBER 22, 2010 (FOURTEEN (14) DAYS AFTER THE DATE SHOWN IN THE CERTIFICATE OF SERVICE HEREIN).  ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

Bank of America, N.A., successor by merger to LaSalle Bank National Association, a national banking association, as indenture trustee under the Indenture, dated November 30, 2006 between Hometown Commercial Trust 2006-1 and LaSalle Bank National Association ("Noteholder"), acting by and through Midland Loan Services, Inc., as special servicer pursuant to that certain Pooling and Servicing Agreement dated November 30, 2006, moves for relief from the automatic stay.

## Factual Background

1. On October 4, 2010 (the "Petition Date"), EQK Bridgeview Plaza (the "Debtor") filed a petition for relief under Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has continued to operate and manage its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No committee of unsecured creditors has been appointed.

2. The Debtor alleges that its principal assets consist of the following properties: (i) 1925 Valley View Lane in Farmers Branch, Texas (the "Eagle Crest Property"); (ii) 2420 Rose Street in La Crosse, Wisconsin (the "Bridgeview Property"); (iii) 104 Franklin, Street in Michigan City, Indiana (the "Dunes Plaza Property"); and (iv) various tracts of land known as the Windmill Farms development in Forney, Texas (the "Windmill Farms Property"). With the exception of the Bridgeview Property, each of the properties (the "Transferred Properties") was transferred to the Debtor from various affiliates pursuant to purchase agreements, each dated September 21, 2010. All of the Transferred Properties were transferred two weeks before the Petition Date.

**I.    The Indebtedness to Noteholder**

3.    As successor-in-interest by merger, Noteholder is the first lienholder on the Eagle Crest Property, as evidenced by certain documents, together with any and all other or additional agreements, instruments, assignments, or other documents evidencing, securing or otherwise relating to the Loan (collectively, the "Loan Documents"), which include, without limitation:

   a. that certain Promissory Note dated as of October 18, 2006 (the "Note"), executed by Transcontinental Brewery, Inc. ("Transcontinental" or the "Borrower"), an affiliate of the Debtor, in favor of Hometown Commercial Capital, LLC (the "Original Lender") in the original principal amount of $2,450,000 (the "Loan") . A true and correct copy of the Note is attached as **Exhibit A**;

   b. that certain Deed of Trust and Security Agreement dated October 18, 2006 (the "Deed of Trust"), executed and delivered by the Borrower to James P. Lazar, as trustee, for the benefit of the Original Lender. A true and correct copy of the Deed of Trust is attached as **Exhibit B**;

   c. that certain Assignment of Leases and Rents (the "Rent Assignment") dated October 18, 2006, executed by the Borrower in favor of the Original Lender. A true and correct copy of the Rent Assignment is attached as **Exhibit C**;

   d. that certain Allonge (the "Allonge") dated November 30, 2006, executed by the Original Lender in favor of the Noteholder. A true and correct copy of the Allonge is attached as **Exhibit D**; and

   e. that certain Assignment of Deed of Trust and Assignment of Leases and Rents (the "Assignment") dated November 30, 2006, executed by the Original Lender in favor of the Noteholder. A true and correct copy of the Loan Assignment is attached as **Exhibit E**.

4.    Noteholder's claim is secured by perfected security interests and liens in real property, including but not limited to the Eagle Crest Property and all of the Debtor's interest (whether leasehold, fee ownership, or otherwise and whether presently existing or hereafter acquired) in personal property, including the rents derived from such property as more fully described in the Loan Documents. The Note provides for full recourse against Transcontinental

and was guaranteed by Prime Income Asset Management, LLC (the "Prime Income" or "Guarantor") pursuant to that certain Guaranty dated October 18, 2006.

5. Pursuant to the Loan Documents, the Noteholder is the current owner and holder of the Loan and Loan Documents, including, without limitation, the following: (i) the right to receive payments due under the Note; (ii) the outstanding indebtedness evidenced by the Note; and (iii) the liens, security interests and rights to enforce the terms and provisions of the Loan Documents.

6. As of the Petition Date, Noteholder's claim equaled approximately $2,437,575.98 (the "Indebtedness"). In the absence of bankruptcy, interest, costs of collection, attorney's fees, and other associated costs and expenses would continue to accrue pursuant to the provisions of the Loan Documents.

7. With respect to the Indebtedness, the Debtor has failed to make payments on Noteholder's debt and as such, is currently in default. Further, Noteholder has obtained an appraisal that indicates the value of the Collateral is substantially less than the Indebtedness.

8. The Debtor has no setoffs, counterclaims, defenses or other causes of action against Noteholder arising out of the Loan Documents or otherwise.

**II. Pre-Petition Scheduled Foreclosures**

9. As a result of defaults on the Loan due to, among other things, Borrower's failure to timely pay amounts due under the Loan Documents, Noteholder posted the Eagle Crest Property for foreclosure, which was scheduled for October 5, 2010. The foreclosure was halted by the transfer of the Eagle Crest Property to the Debtor and the Debtor's bankruptcy filing.

### III. The Undisclosed Transfer

10. Upon information and belief, Transcontinental transferred the Eagle Crest Property (the "Transfer") from Transcontinental to the Debtor (without Noteholder's knowledge) pursuant to that certain Purchase Agreement (the "Undisclosed Purchase Agreement") dated September 21, 2010 by and among IORI Operating, Inc. ("IORI") (an affiliate of the Debtor) and the Debtor. Pursuant to the Undisclosed Purchase Agreement, IORI transferred 100% of the common stock in Transcontinental to the Debtor and caused Transcontinental to deed the Eagle Crest Property to the Debtor, subject to the Loan. By general warranty deed dated September 21, 2010, Transcontinental transferred the Eagle Crest Property to the Debtor.

11. The Debtor did not assume the Loan, which is full recourse against the Borrower.[1] As consideration under the Undisclosed Purchase Agreement, the Debtor gave IORI a promissory note in the amount of $1,429,117.00. Nothing in the Undisclosed Purchase Agreement evidences that Transcontinental received any consideration in exchange for its transfer of the Eagle Crest Property to the Debtor. Upon information and belief, Transcontinental did not receive any consideration for the Transfer.

### IV. Loan Document Violation

12. The Transfer violated the Loan Documents because Noteholder did not consent to the Transfer:

> It shall be an Event of Default if there is any Prohibited Transfer. A "Prohibited Transfer" shall mean any Sale, Pledge, or other transfer of a legal or equitable interest in the Property, any part thereof or any legal or beneficial interest therein…[2]

---

[1] Paragraph 1.4 of the Purchase Agreement states that the Debtor is taking the Eagle Crest Property "subject to the mortgage debt."
[2] Deed of Trust at Section 8.1.

13. Section 8.3 of the Deed of Trust provides that Noteholder may consent to an otherwise "Prohibited Transfer" so long as it receives at least 10 days notice. Transcontinental did not notify Noteholder of the Transfer. Noteholder did not (and does not) consent to the Transfer of the Eagle Crest Property to the Debtor. As such, the Transfer was contrary to the express terms of the Loan Documents.

14. Upon information and belief, the transfers of the Dunes Plaza Property and the Windmill Farms Property were made under similar circumstances. Each such transfer occurred 13 days before the Petition Date and was between the Debtor and an affiliate of the Debtor.

## Arguments and Authorities

15. Noteholder seeks relief from the automatic stay so that it may pursue its remedies under the Loan Documents and applicable state law, including, but not limited to, foreclosure of its security interests in the Collateral.

### A. Cause exists to terminate the automatic stay.

16. Noteholder submits that cause exists to grant relief from the automatic stay pursuant to Section 362(d)(1) "for cause, including lack of adequate protection." Although the Bankruptcy Code does not define "cause," the lack of adequate protection is the argument most commonly employed to justify requests.[3] Lack of adequate protection is shown by "erosion of the creditor's position or of a threatened erosion."[4] Erosion can be demonstrated through evidence, in any form, that effectively demonstrates that the creditor's position in the collateral is in jeopardy. Evidence of erosion has been shown by: (a) declining property value, (b) increasing amount of secured debt, (c) non-payment of taxes or other senior liens, (d) failure to insure the

---

[3] *Timbers*, 484 U.S. at 371.
[4] *In re J&M Salupo Dev. Co., Inc.*, 388 B.R. 809, 812 (Bankr. N.D. Ohio 2008).

property, (e) failure to maintain the property, or (f) sour market conditions.[5]  Numerous bankruptcy courts have held that bad faith also constitutes "cause" in determining whether to grant stay relief.[6]

17.  The Transfer of the Eagle Crest Property on the eve of foreclosure demonstrates the Debtor's bad faith.  This pre-petition Transfer was improper and a default under the Loan Documents.  Neither the case law nor the Bankruptcy Code have enumerated a precise test for establishing bad faith.  Rather, the Debtor's pre-petition conduct is analyzed to decide if the conduct was improper.[7]

18.  "Cause" also exists for relief from the automatic stay because the Noteholder's perfected liens and security interests in the Collateral are not adequately protected.[8]  The Collateral is declining in value.  By the Debtor's own admission at the cash collateral hearing, the Debtor's authorized agent, Gregory Crown, testified that the Debtor has no equity in the Eagle Crest Property as the Debtor values the property between $2.3 million and $2.4 million.  It is undisputed that sour conditions exist as the real estate market is depressed.  Likewise, the Debtor has failed to properly maintain the property.  Crown testified at the cash collateral hearing that part of the Collateral had been destroyed without consultation or notice to the Noteholder. He further testified that the Debtor's tenant is Prime Income, which is the guarantor of the Loan.  And although Prime Income allegedly pays nearly $25,000 per month, the building is actually used for storage and no payments have been sent to Noteholder.

19.  Cause also exists to terminate the stay pursuant to Section 362(d)(4).  On its face, Section 362(d)(4) requires a bankruptcy court to grant relief from the automatic stay with respect

---

[5] *Id.* (quoting *In re Layne,* 17 B.R. 140, 142 (Bankr. D.S. Ohio 1981)).
[6] *In re Trident Assocs., L.P.*, 52 F.3d 127, 131 (6th Cir. 1995).
[7] *In re Laguna Assocs., L.P.*, 30 F.3d 734, 736-37 (6th Cir. 1994).
[8] *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd*, 484 U.S. 365, 370-71, 108 S. Ct. 626, 630, 98 L.Ed.2d 740 (1988).

to an act against real property if the Court finds that (a) the movant is a secured creditor; (b) the filing of the petition was part of a scheme to delay, hinder, and defraud creditors, and (c) such scheme involved a transfer of real property without the consent of the secured lender or court approval.[9]

20. This case clearly falls under Section 364(d)(4). Noteholder is a secured creditor. The Debtor's undisclosed transfers of the Transferred Properties demonstrate that the filing of the petition is part of a scheme to delay, hinder, and defraud creditors. Finally, the scheme involved a transfer of the real property (the Transferred Properties) without the consent of the secured creditors or court approval.[10]

### B. The Debtor does not have equity in the Eagle Crest Property and the Debtor does need the property to reorganize.

21. Additionally, and without waiving the foregoing, Noteholder submits that this Court should grant relief from the automatic stay under 11 U.S.C. § 362(d)(2). Section 362(d)(2) provides that a court shall terminate the stay if the debtor (i) does not have equity in the property, and (ii) the property is not necessary for an effective reorganization.

22. Bankruptcy Courts determine equity by comparing the value of the Collateral against the amount of liens against the Collateral and the Collateral's current value.[11] With respect to the Eagle Crest Property, the Debtor owes $2,437,575.98 and Crown testified at the Cash Collateral Hearing that it believes that the collateral value is between $2.3 and $2.4 million. Accordingly, the Debtor has no equity in the Collateral.

---

[9] *In re Young*, 2007 WL 128280 (Bankr. S.D. Tex. Jan. 10, 2007) (granting stay relief).
[10] *See In re Blair,* 2009 WL 5203737 (Bankr. E.D.N.Y. Dec. 21, 2009) (granting relief from the automatic stay and dismissing the bankruptcy petition).
[11] *In re Franklin Equipment, Co.,* 416 B.R. 483, 522 (Bankr. E.D. Va. 2009) (finding that for purposes of § 362(d)(2), lack of equity is shown by demonstrating that the value of the collateral is les than the sum total of all of its liens).

23. Likewise, the Collateral is not necessary for an effective reorganization. The Debtor purports to own four different parcels of Properties. As such, termination of the stay with respect to the Eagle Crest Property will not prohibit the Debtor from formulating a plan of reorganization. As such, this Court should terminate the automatic stay.

## Prayer

**WHEREFORE**, Noteholder respectfully requests this Court to enter an order granting Noteholder relief from automatic stay; and be authorized to take any and all acts necessary so that it may exercise its rights and remedies against the Collateral (including, but not limited to, making demand for payment of the Note, accelerating the Note, and taking possession of the Collateral). Noteholder also requests such other and further relief as this Court deems proper both at law and in equity.

**DATED:** November 8, 2010.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: */s/ Demetra L. Liggins*
David M. Bennett
Texas Bar No. 2139600
Demetra L. Liggins
Texas Bar No. 24026844
B. Ransdell Sawyer
Texas Bar No. 24070557

1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214/969-1700
Facsimile: 214/969-1751
E-mail: david.bennett@tklaw.com
E-mail: demetra.liggins@tklaw.com
E-mail: randy.sawyer@tklaw.com

**ATTORNEYS FOR BANK OF AMERICA, N.A. (SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION), A NATIONAL BANKING ASSOCIATION, AS INDENTURE TRUSTEE UNDER THE INDENTURE DATED NOVEMBER 30, 2006, BETWEEN HOMETOWN COMMERCIAL TRUST 2006-1 AND LASALLE BANK NATIONAL ASSOCIATION**

## CERTIFICATE OF CONFERENCE

    The undersigned hereby certifies that he contacted the Debtor's counsel, Melissa S. Hayward on November 7, 2010 via electronic mail regarding the relief requested in this Motion. Ms. Hayward has indicated that she opposes the relief requested.

                                /s/   *B. Ransdell Sawyer*
                                   One of Counsel

## CERTIFICATE OF SERVICE

    I hereby certify that on November 8, 2010 a true and correct copy of the foregoing has been served on all parties entitled to service via this court's ECF filing system and to the parties listed on the attached service list via United States first-class mail.

                                /s/   *Demetra L. Liggins*
                                   One of Counsel