Melissa S. Hayward
  Texas Bar No. 24044908
  MHayward@FSLHlaw.com
**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (214) 789-9977
Fax: (214) 723--5345

ATTORNEY FOR
EQK BRIDGEVIEW PLAZA, INC.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EQK BRIDGEVIEW PLAZA, INC., | § | CASE NO. 10-37054-SGJ-11 |
| | § | |
| Debtor. | § | CHAPTER 11 |

### DEBTOR'S MOTION TO EXCHANGE 12.0717 ACRES OF EAGLE CREST PROPERTY WITH 2.961 ACRES OWNED BY FARMERS BRANCH LOCAL GOVERNMENT CORPORATION PURSUANT TO 11 U.S.C. § 363

TO THE HONORABLE STACEY G. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:

    EQK Bridgeview Plaza, Inc. (the "Debtor") files this *Motion to Exchange 12.0717 Acres of Eagle Crest Property with 2.961 Acers Owned by Farmers Branch Local Government Corporation Pursuant to 11 U.S.C. § 363* and would respectfully show as follows:

**I.**

**BACKGROUND FACTS**

    1.    On October 4, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), initiating the above-styled bankruptcy case.

2. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3. No creditors' committee has been appointed in this case by the United States Trustee. Further, no trustee or examiner has been requested or appointed in this chapter 11 case.

4. The Debtor's primary assets consist of various real estate holdings in multiple states. Specifically, the Debtor owns: (i) the Bridgeview Plaza shopping center located at 2420 Rose Street in La Crosse, Wisconsin 54603 (the "Bridgeview Property"); (ii) an office building and warehouse and approximately 12.0717 acres of land located behind the office building located at 1925 Valley View Lane in Farmers Branch, Texas 75234 (the "Eagle Crest Property"); (iii) approximately 2,928.441 acres of undeveloped land in Kaufman County, Texas (the "Windmill Farms Property"); and (iv) the Dunes Plaza shopping center located at 104 Franklin Street in Michigan City, Indiana 46360 (the "Dunes Plaza Property", collectively with the Bridgeview Property, the Eagle Crest Property, and the Windmill Farms Property, the "Properties").

5. The Debtor has always owned and operated the Bridgeview Property and is allegedly indebted to Grand Pacific Finance Corp. ("Grand Pacific") pursuant to a loan made to the Debtor by Grand Pacific on or about March 24, 2005 in the original principal amount of $7,197,000.00 (the "Bridgeview Loan"). Prior to the bankruptcy filing, the Debtor was defending an action initiated by Grand Pacific in Wisconsin state court in which Grand Pacific was attempting to obtain the appointment of a receiver over the Bridgeview Property and foreclose upon the Bridgeview Property. Grand Pacific has also been collecting the rents from the Bridgeview Property since May 2010. The Debtor believes that it holds significant equity in the Bridgeview Property, which is an operating shopping center in Wisconsin that is approximately 91% occupied and provides substantial cash flow, and the Debtor therefore

determined to initiate a bankruptcy proceeding in order to protect this valuable asset and restructure and reorganize its affairs.

6. At the same time, several of the Debtor's affiliates, namely South Cochran Corporation, which owned the Dunes Plaza Property, EQK Windmill Farms, LLC, which owned the Windmill Farms Property, and Transcontinental Brewery, Inc.,[1] which owned the Eagle Crest Property, (collectively, the "Affiliates") were each facing similar foreclosure attempts initiated by their respective secured lenders and had also determined to initiate their own respective bankruptcy proceedings to protect their assets and restructure and reorganize their affairs. Much like the Bridgeview Property, the Dunes Plaza Property is an operating shopping center, and there is substantial equity in both the Windmill Farms Property and the Eagle Crest Property. In fact, according to a recent appraisal, the Windmill Farms Property offers approximately $29 million in equity over its secured debt.

7. After much deliberation, the Debtor, the Affiliates, and the Debtor's parent company Warren Road Farm, Inc. ("Warren Road") determined that the most effective and efficient way to utilize the Properties' respective equities and cash flows and to reorganize the collective assets of the Debtor and the Affiliates was for the Debtor to purchase the assets and stock of the Affiliates and to thereafter file one consolidated bankruptcy case. As such, on or about September 21, 2010 the Debtor acquired, *inter alia*, the assets and liabilities, stock, and intercompany receivables of South Cochran Corporation, thereby acquiring the Dunes Plaza Property, for total consideration in the amount of $3,222,978.00, which amount was paid through the Debtor's assumption of South Cochran Corporation's liabilities, including the Dunes Plaza Loan and indebtedness to Grand Pacific, and its receipt of an intercompany receivable. That same

---

[1] Transcontinental Brewery, Inc. has since changed its name to 1925 Valley View, Inc.

day, the Debtor also acquired the assets and liabilities and stock of Transcontinental Brewery, Inc., thereby acquiring the Eagle Crest Property, for a total purchase price of $3,800,000.00, which sum was paid by taking the Eagle Crest Property subject to its existing mortgage and paying the remainder of the purchase price via a promissory note. Likewise, the Debtor also acquired the assets and liabilities and stock of EQK Windmill Farms, LLC, thereby acquiring the Windmill Farms Property, for a total purchase price of approximately $59,955,000.00.[2] Like its purchase of the other Affiliates and their assets, the Debtor paid substantial consideration for its purchase of the assets of EQK Windmill Farms, LLC by taking the Windmill Farms Property subject to its outstanding mortgage and paying the remainder of the purchase price via a promissory note.

8. With regard to the Eagle Crest Property, as of the Petition Date, the Debtor was allegedly indebted to Bank of America, N.A., successor by merger to LaSalle Bank National Association, a national banking association, as indenture trustee under the Indenture, dated November 30, 2006 between Hometown Commercial Trust 2006-1 and LaSalle Bank National Association, acting by and through Midland Loan Services, Inc., as special servicer pursuant to that certain Pooling and Servicing Agreement dated November 30, 2006 ("BOA") pursuant to a loan originally made to Transcontinental Brewery, Inc. by Hometown Commercial Capital, LLC on or about October 13, 2006 in the original principal amount of $2,450,000.00 (the "Eagle Crest Loan").

9. The Debtor is actively seeking to maximize the value of its assets and increase value to this bankruptcy estate, and the Eagle Crest Property is central to this plan.

10. The Eagle Crest Property is situated on 18.59 acres of land. By way of this Motion, the Debtor seeks authority to exchange 12.0717 of the acres located toward the back of the Eagle

---

[2] While the documents evidencing the Debtor's purchase of the Windmill Farms Property reflect a higher purchase price, such documents and purchase price did not reflect certain acreage that had previously been assigned.

Crest Property for 2.961 acres owned by Farmers Branch Local Government Corporation ("Farmers Branch") located at the intersection of the President George Bush Turnpike and Valley View Lane (the "Proposed Property Exchange").[3] True and correct copies of the Purchase and Sale Agreement and amendment thereto (the "Purchase Agreement") are attached hereto as Exhibit 1.

11. The acreage to be swapped with Farmers Branch is located fronting the northern edge of Valley View Lane just east of the northbound exit ramp and northbound entrance ramp to the President George Bush Turnpike. The location is on the north edge of Mercer Crossing, a 1,100 acre business park, just west of new retail and gas station development at the intersection of Valley View Lane and Luna Road. The site has excellent visibility and access, and its highest and best use will likely be service retail development. Because it is a flat, rectangular parcel at grade that contains just a few trees, a small brick structure, a loading ramp and some paved area, the Debtor expects to have minimal site preparation/cost prior to development.

12. Based upon a March 2010 appraisal of a comparable property in the vicinity, the undeveloped 2.961 acres are estimated to be worth approximately $11.65 per square foot, or $1,502,630. True and correct copies of the appraisal of the comparable property and a photograph showing the locations of the two properties are attached hereto as Exhibits 2 and 3 respectively.[4]

## II.

## PROPOSED EXCHANGE

13. Pursuant to the Purchase Agreement and the Proposed Property Exchange, the Debtor would exchange an approximately 12.0717 acre tract of land which is located at the back

---

[3] Certain affiliates of the Debtor will also be exchanging other land with Farmers Branch as part of the overall transaction contemplated in the Purchase Agreement. However, the only part of the transaction that affects the Debtor is the exchange of the 12.0717 acres from the Eagle Crest Property for the 2.961 acres owned by Farmers Branch discussed herein.

[4] The Debtor intends to obtain an appraisal of the 2.961 acres and will be filing a motion seeking authority to retain an appraiser.

end of the Eagle Crest Property to Farmers Branch for a 2.961 acre tract of land owned by Farmers Branch located at the intersection of the President George Bush Turnpike and Valley View Lane. The Proposed Property Exchange is on an "as is" basis, with no warranty or guarantee being provided. As mentioned above, pursuant to a March 2010 appraisal of a comparable property in the vicinity, the value of the 2.961 acre tract is approximately $11.65 per square foot, or $1,502,630.

14. BOA allegedly has a lien upon the 12.0717 acres owned by the Debtor. Pursuant to this Motion, the Debtor requests that any alleged liens BOA has upon the 12.0717 acres owned by the Debtor be transferred to and attach to the 2.961 acre tract that the Debtor will receive from Farmers Branch in exchange.

## III.

## ARGUMENT AND AUTHORITIES

15. This Court may authorize the exchange of the 12.0717 acres owned by the Debtor pursuant to Section 363(b)(1) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1). The sale of the assets of a debtor outside the ordinary course of business may be approved by a bankruptcy court when: (i) there is a sound business reason for the sale; (ii) accurate and reasonable notice is provided to interested parties; (iii) the price is fair, reasonable and adequate; and (iv) the sale is made to the purchaser in good faith. *See, e.g., In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Stroud Ford, Inc.*, 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

16. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997); *Official Committee of Subordinated*

*Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("the objective of bankruptcy sales and the Debtor's duty with respect to such sales is to obtain the highest price or overall greatest benefit possible for the estate" (*quoting In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988))). As recognized by the Fifth Circuit, the Debtor is entitled to use its business judgment in determining whether to sell assets outside the ordinary course. *See Institutional Creditors of Continental Air Lines Inc. v. Continental Air Lines Inc. (In re Continental Air Lines Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986).

17.     Here, the Debtor and its representatives engaged in extensive, good faith, and arm's length negotiations with Farmers Branch in negotiating and executing the Purchase Agreement. Moreover, the Proposed Property Exchange is fair and adequate and advantageous for the bankruptcy estate, as the land that the Debtor will receive from Farmers Branch is far more valuable than the 12.0717 acres it currently owns as part of the Eagle Crest Property. In sum, the 2.961 acres offered by Farmers Branch is the highest and best offer for the 12.0717 acres owned by the Debtor, as it is highly unlikely that the Debtor would be able to sell these acres other than through the Proposed Property Exchange due to the depressed real estate market and the location of the acres.

18.     In fact, the August 13, 2010 appraisal of the Eagle Crest Property obtained by BOA (the "<u>BOA Appraisal</u>") confirms that the Proposed Property Exchange is in the best interest of the Debtor's bankruptcy estate. The BOA Appraisal of the Eagle Crest Property values the Eagle Crest Property at $2,195,000 based upon its conclusion that the entire 18.59 acres are industrial land worth between $2.71 and $2.82 per square foot.[5] While the Debtor vehemently disagrees with the

---

[5] The BOA Appraisal places a value of $2.82 PSF (gross) / $2.71 PSF (net of demolition costs)

**MOTION TO EXCHANGE 12.0717 ACRES OF EAGLE CREST PROPERTY WITH 2.961 ACERS OWNED BY FARMERS BRANCH LOCAL GOVERNMENT CORPORATION PURSUANT TO 11 U.S.C. § 363          PAGE 7 OF 10**

BOA Appraisal's approach[6] and failure to place any value upon the building located on front of the Eagle Crest Property,[7] even using the BOA Appraisal's high value of $2.82 per square foot yields a value for the 12.0717 acres of $1,482,877.97, and this number does not take into account the fact that the 12.0717 acres to be exchanged are at the back end of the Eagle Crest Property and that the Debtor will retain the more valuable frontage acres.

19. It is both logical and conforming with real estate practices to assume that the acreage behind the building and not fronting Valley View Lane is worth significantly less than that fronting Valley View Lane. The land fronting Valley View Lane and on which the building sits totals 6.5183 acres (283,937 SF) and is likely worth between $5 and $8 per square foot. Using the most conservative of these estimates, the frontage land is worth $1,419,685 – yielding a value of $775,315 for the 12.0717 acres to the rear of the site ($1.47 PSF) per the BOA Appraisal of total land value. Thus, even if one were to use the very conservative land valuation per the BOA Appraisal, the land exchange accrues to the benefit of BOA by $727,315 ($1,502,630-$775,315)

---

[6] The BOA Appraisal is inaccurate on several grounds. For one, it is based solely upon the value of the underlying land as vacant and does not take into account the value of the fully leased office building. As such, the BOA Appraisal wholly disregards the current lease on the Eagle Crest Property, under which a party related to the Debtor, Prime Income Asset Management, rents 19,616 SF at $12.51 PSF and 10,168 SF at $6.00 PSF (providing an overall average $10.29 PSF). Thus, the BOA Appraisal provides an analysis that is inconsistent with reality and fails to consider the motivation of Prime Income Asset Management, a related party, to continue making its monthly rent payments. Further, the site is not industrial in nature, and the BOA Appraisal's consideration of the building to be industrial space is misplaced, as the remaining building space would easily qualify as C office/warehouse space. As if these inaccuracies weren't enough, three of the four comparables chosen for the land values were in South Dallas, nowhere close to the subject site, and the fourth site was located southeast of the DFW Airport. Thus, none of the sites were located in a truly comparable location that would reflect appropriate land values.

[7] The Debtor's representative testified at a previous hearing that he believed the value of the Eagle Crest office building alone using a direct capitalization approach with a 9.5% cap rate was around $2.3 million. This value was calculated by analyzing the building's net operating income per the September financial statements and conservatively estimating the annual net operating income for the building at $220,000 per year. This amount was then divided by a 9.5% cap rate, yielding a derived value of the building under the current lease at $2,315,789. Notably, Mr. Crown's value of the building situated on the Eagle Crest Property is within 5% of the BOA Appraisal of just the raw land. To add further credibility to Mr. Crown's valuation, the BOA Appraisal also used the direct capitalization approach with a 10% cap rate to determine the value for the building. However, because the BOA Appraisal wholly failed to consider the current lease, the BOA Appraisal provided a derived value for the building of only $490,000. The Debtor questions whether the BOA Appraisal, which is undeniably one-sided and ommisive, was procured by PNC in good faith. The Debtor is curious to see what instructions PNC provided to the appraiser in commissioning the report and reserves its right to seek discovery on this issue should the parties proceed to litigation.

and the total value of the land collateral without the building is more accurately estimated to be $2,922,315 ($1,502,630 + $1,419,685).

20. Thus, whichever way the numbers are analyzed, and without even taking into consideration whether any value should be allocated to the office building that currently provides the Debtor and its estate with $25,534.00 in rent each month,[8] under the BOA Appraisal, the acres to be received pursuant to the Proposed Property Exchange are more valuable than the 12.0717 owned by the Debtor. More importantly, <u>the Proposed Property Exchange unlocks the value of the excess acreage while allowing the Debtor to retain the office building that produces $25,534.00 in rent each month</u>. In fact, the Debtor believes that, with the Proposed Property Exchange, the value of the Eagle Crest Property will be in excess of $3.8 million.

21. Farmers Branch is not an insider of the Debtor and is not associated with the Debtor or its principals. Therefore, Farmers Branch should be entitled to the maximum protections provided by section 363(m) of the Bankruptcy Code.

22. Farmers Branch is a local government corporation, and the Debtor is confident that Farmers Branch is ready, able, and willing to close the Proposed Property Exchange as contracted.

23. For all these reasons, the Debtor submits that approval of the Proposed Property Exchange is in the estate's best interest.

24. With regard to Section 363(f) of the Bankruptcy Code, any alleged liens currently held by BOA on the 12.0717 acres will transfer to and attach to the Proposed Swap Property. BOA is thus adequately protected because the 2.961 acres that the Debtor will receive in exchange are more valuable than the 12.0717 acres owned by the Debtor as discussed above.

---

[8] As noted above, using the same direct capitalization approach as the BOA Appraisal with a .5% lower cap rate, the <u>office building alone</u> is valued around $2.3 million.

# IV.

## REQUEST FOR RELIEF

BASED UPON THE FOREGOING, the Debtor respectfully requests that this Court enter an Order: (i) granting this Motion; (ii) authorizing the Debtor to exchange the 12.0717 acres owned by the Debtor to Farmers Branch under the terms of the Purchase Agreement and subject to any alleged liens of BOA; and (iii) granting the Debtor such other and further relief to which it may be justly entitled.

DATED: November 29, 2010.

>Respectfully submitted,
>
>**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
>/s/ Melissa S. Hayward
>Melissa S. Hayward
>Texas Bar No. 24044908
>MHayward@FSLHlaw.com
>10501 N. Central Expy., Ste. 106
>Dallas, Texas 75231
>Tel: (972) 755-7100
>Fax: (972) 755-7110
>**PROPOSED ATTORNEYS FOR EQK BRIDGEVIEW PLAZA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was sent either electronically by the clerk of court on November 29, 2010 or via first class United States mail, postage prepaid to all parties appearing on the attached service list.

>/s/ Melissa S. Hayward
>Melissa S. Hayward